**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER HOLLIFIELD, | ) | CASE NO. 1:12-cv-568 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Christopher Hollifield ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.   PROCEDURAL HISTORY**

On October 14, 2004, Plaintiff filed an application for POD and DIB and alleged a disability onset date of September 15, 2003. (Transcript ("Tr.") 70.) The claim was denied initially and upon reconsideration, and Plaintiff requested an administrative hearing. (*Id*.) On October 31, 2007, Administrative Law Judge ("ALJ") Edmund Round conducted a hearing, at which Plaintiff participated, testified and was represented by counsel. (*Id*.) A certified Vocational Expert ("VE") appeared and testified as well. (*Id*.) On January 18, 2008, ALJ Round determined that Plainitff was not disabled under the

Act.  (Tr. 70-82.)

On February 26, 2008, Plaintiff filed another application for POD and DIB and alleged a disability onset date of August 4, 2009.  (Tr. 14.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ.  (*Id*.)  On October 5, 2010, ALJ Kendra S. Kleber held Plaintiff's hearing.  (*Id*.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id*.)  A VE also participated and testified.  (*Id*.)  On October 18, 2010, ALJ Kleber found Plaintiff not disabled.  (Tr. 12-20.)  On January 5, 2012, the Appeals Council declined to review ALJ Kleber's decision, and the her decision became the Commissioner's final decision.  (Tr. 1.)

On March 8, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On August 17, 2012, Plaintiff filed his Brief on the Merits.  (Doc. No. 16.)  On October 1, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 15.)  Plaintiff did not file a Reply Brief.

Plaintiff asserts the following assignments of error: (1) the ALJ Kleber's determination of his Residual Functional Capacity ("RFC") is not supported by substantial evidence; and (2) new and material evidence supports remanding his case for further proceedings.

## II.   EVIDENCE

### A.   Prior ALJ Decision

In his October 2007 decision, ALJ Round made the following relevant findings of fact and conclusions of law:

2

3.   Plaintiff has the following severe impairments: mononeuritis in the left groin and leg after hernia repair, cervical spine disc bulge at C5-6, remote burst fractures of the L2 and L3 vertebrae, and a bipolar disorder.

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

5.   Plaintiff retains the RFC to perform a range of light work.  Specifically, he can lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and can sit, stand and/or walk for 6 hours each in an 8-hour day with normal breaks.  He is precluded from using ladders, ropes and scaffolds and is precluded from work that involves hyper-extending his neck (*i.e.* looking at the ceiling).  He is precluded from exposure to workplace hazards such as unprotected heights or unprotected moving machinery and is precluded from occupational driving.  He is limited to simple, routine, low stress tasks that do not take place in public, where there is only limited and superficial interaction with supervisors and co-workers, and where there are no tasks requiring arbitration, confrontation, negotiation, directing the work of others, or being responsible for the safety of others.

6.   Plaintiff is unable to perform any past relevant work.

\* \* \*

10.  Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.  Plaintiff has not been under a disability, as defined in the Act, from September 15, 2003 through the date of this decision.

(Tr. 72-82.)  With respect to Plaintiff's mental impairment, ALJ Round observed that the record contained the following information: (1) a February 9, 2005 psychological evaluation by agency consulting examiner James F. Sunbury, Ph.D., who diagnosed Plaintiff with bipolar disorder, assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50, and opined that Plaintiff was moderately limited in his ability to withstand the stress and pressure of day-to-day work (Tr. 78); (2) a March 1, 2005

3

Bureau of Disability Determination that Plaintiff retained the RFC to work in a low stress environment with frequent social interactions (*Id.*); (3) records from a May 13, 2005 examination by Plaintiff's treating psychiatrist, Greg Boehm, M.D., who diagnosed Plaintiff with bipolar disorder and assigned him a GAF of 55 (*Id.*); (4) records from December 2005 and June 2006, in which Dr. Boehm, assigned Plaintiff a GAf of 60; and (5) November 2005, December 2005 and September 2007 opinions from Dr. Boehm that Plaintiff had "'poor or none' abilities in virtually every area of psychological functioning in the workplace." (*Id.*).  ALJ Round determined that Dr. Boehm's conclusions regarding Plaintiff's psychological functioning in the workplace were "not persuasive" because they were inconsistent with Dr. Boehm's progress notes, which showed that Plaintiff's condition had improved over time.  (*Id.*)

### B.    Personal and Vocational Evidence

Plaintiff was born on August 19, 1959, and was 45 years old on the alleged disability onset date.  (Tr. 18.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as a landing gear mechanic, templater, construction supervisor, truck driver and shipping and receiving clerk.  (Tr. 17.)

### C.    Medical Evidence[1]

#### 1.    Treating Providers

From January 2, 2007 through August 2010, Plaintiff treated with Maryann

---

[1]  Plaintiff claimed disability on the basis of physical ailments in addition to his mental condition.  (Tr. 15.)  ALJ Kleber included both physical and mental restrictions in his RFC.  (Tr. 16.)  Plaintiff does not challenge ALJ Kleber's conclusion regarding his physical limitations.

4

Gambitta, a licensed social worker.  (Tr. 251-61, 326-41, 409-23, 428, 465-75.)  During his sessions with Ms. Gambitta, Plaintiff reported feelings of anger, negativity and anxiety, and complained of difficulties in his family relationships, low self esteem and boredom.  (*Id*.)  Ms. Gambitta noted on various occasions throughout her treatment of Plaintiff that his mood was "stable" on his medications (Tr. 422 (December 30, 2008), 416 (March 2, 2009), 472 (March 17, 2010), 471 (April 5, 2010)), that Plaintiff felt that his relationships with various family members were improving (Tr. 416 (May 6, 2009)), and that he was feeling less depressed and less negative (Tr. 467 (July 2, 2010)).

Plaintiff treated with psychiatrist Gregory Boehm, M.D., from January 2008 through the date of Plaintiff's October 2011 hearing.  (Tr. 263, 342-43, 424-27, 464, 484-85.)  Dr. Boehm diagnosed Plaintiff with bipolar disorder, attention deficit disorder and panic disorder.  (Tr. 263.)  Throughout Plaintiff's treatment, Dr. Boehm noted his depressed mood and affect. (Tr. 263, 343, 424, 464, 484.)  On December 6, 2008, Dr. Boehm noted Plaintiff's report that he was "doing okay," and "doing well."  (Tr. 427.)  On December 11, 2008, Plaintiff reported that he was "afraid" and "under a lot of pressure." (Tr. 424.)  In July 2009, Dr. Boehm noted Plaintiff's mood swings. (Tr. 425.)  In September 2010, Plaintiff reported that he was "tired[,] stressed out [and] anxious."  (Tr. 484.)

### 2. Agency Assessments and Reports

In April 2008, Dr. Boehm completed a medical source statement, in which he opined that Plaintiff was unable to "control his impulses," experienced "severe mood swings" and depression, and was "explosive" and "withdrawn."  (Tr. 272.)  Dr. Boehm noted that Plaintiff could not concentrate or focus, and had a severely impaired

5

memory. (*Id*.) With respect to Plaintiff's ability to engage in his daily activities, Dr. Boehm described Plaintiff as "too impaired cognitively, poor memory. He can't remember long enough to complete projects." (*Id*.) According to Dr. Boehm, Plaintiff's social interactions were limited because Plainitff "cannot accept direction [or] instructions." (*Id*.) Dr. Boehm reported that Plaintiff had been asked to leave "several settings" because of "his loss of control over what he says and does." (*Id*.) Dr. Boehm noted that Plaintiff lost control, "rage[d]" and became "destructive" every day: "He becomes so enraged at daily frustrations that he destroys whatever is in front of him – his home is ruined." (Tr. 272-73.) Dr. Boehm reported that Plaintiff experienced "mild" improvement with medication, "enough improvement to keep him out of the hospital." (Tr. 273.) He diagnosed Plaintiff with bipolar disorder, mood swings and "explosive with psychotic features." (*Id*.)

In May 2008, Dr. Sunbury examined Plaintiff. (Tr. 274-78.) He noted that Plaintiff was "responsive to questions" and "was able to concentrate on . . . questions and maintain his train of thought as he answered." (Tr. 276.) According to Dr. Sunbury, Plaintiff showed no signs of thought disorder, and appeared to have low-average insight and fair to poor judgment. (Tr. 277.) Dr. Sunbury diagnosed Plaintiff with bipolar disorder, passive aggressive personality features, and psychosocial and environmental problems, and assigned him a a GAF of 50. (*Id*.) Dr. Sunbury opined that Plaintiff was moderately impaired in his ability to relate to others, including fellow workers and supervisors, that he was markedly impaired in his ability to withstand stress and pressures associated with day to day work activity, and that his ability to understand,

6

remember and follow directions was not impaired.  (*Id.*)

In a May 2008 Mental Residual Functional Capacity assessment, agency consulting psychologist Catherine Flynn, Psy.D., determined that Plaintiff was moderately limited in his ability to: understand and remember instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with, or proximity to, others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  (Tr. 280-81.)  Dr. Flynn noted Dr. Sunbury's opinion regarding Plaintiff's ability to withstand stress, but declined to adopt it, noting that Plaintiff "has no documented history of decompensation under stress, no psychiatric IP nor suicide attempt. . . . He retains the ability to complete routine, low stress activities which minimize prolonged social exposure."  (Tr. 282.)  In a May 2008 Psychiatric Review Technique, Dr. Flynn diagnosed Plaintiff with bipolar disorder and passive-aggressive personality features.  (Tr. 284-97.)  She determined that Plaintiff had moderate difficulties in activities of daily living; social functioning; and maintaining concentration, persistence and pace.

In a December 2009 medical source statement, Dr. Boehm opined that Plaintiff

7

had poor (defined as "significantly limited") ability to: follow work rules; maintain attention and concentration for extended periods of 2 hour segments, respond appropriately to changes in routine settings; deal with the public; relate to co-workers; interact with supervisors; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stresses; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex and detailed, but not complex, job instructions; socialize; behave in an emotionally stable manner; relate predictably in social situations; and manage funds/schedules.  (Tr. 407-08.)  In August 2010, Dr. Boehm completed another medical source statement, in which he made findings identical to the conclusions in his December 2009 medical source statement.  (Tr. 476-77.)

### D.     Hearing Testimony

#### 1.     Plaintiff's Hearing Testimony

During his October 5, 2010 administrative hearing, Plaintiff testified as follows:

Plaintiff got "wound [up] about things," and was "always worried about things . . . wondering what shoe is going to drop next; why God hates me, and that's where everything kind of sets on . . . and then you'll get to where the slightest thing and it starts winding you up."  (Tr. 36.)  The biggest issue preventing him from returning to work was "[n]ot wanting to be crazy all the time."  (*Id*.)  Plaintiff described his difficulties in interacting with co-workers, relating an incident in which he reacted angrily to a co-

8

worker's request that Plaintiff drive a different route at work:

> I didn't want to do it and I came totally off to him. I was yelling at him, fussing at him, calling him everything but something good to eat and everything else[. T]hen I get in the truck and take all the time in the world and I have the rest of the day to be [angry] about it, all right? Thinking about flipping the truck in the ditch, okay just being done with it.

(Tr. 37-38.) Plaintiff was taking lithium, Lexapro and Seroquel. (Tr. 38-39.) Plaintiff slept 12 to14 hours each day, taking a five hour nap in the middle of the day because he was "beat." (Tr. 39.)

## 2. Vocational Expert's Hearing Testimony

ALJ Kleber described the following hypothetic individual to the VE, and asked whether that hypothetical individual would be able to perform any of Plaintiff's past relevant work:

> [I]magine if you will a . . . hypothetical person of the [same] age, education and . . . past relevant work experience as [Plaintiff] whose ability work is limited such that he's able to lift occasionally no more than 20 pounds, frequently no more than 10; can stand, walk or sit for six hours out of eight; unlimited ability to push or pull; able to perform work that involves no climbing of ladders or scaffolds; no commercial driving and no exposure to unprotected heights or uncovered industrial machinery. Limited to performing simple routine tasks that do not take place in public; that involve limited and superficial contact with supervisors and co-workers and that do not require arbitration, confrontation, directing the work of others or being responsible for the safety of others.

(Tr. 52.) The VE opined that the hypothetical individual described by ALJ Kleber could not perform any of Plaintiff's past relevant work. (*Id.*) However, the VE testified that the hypothetical could perform work as a cleaner/housekeeper, inspector/hand packager or assembly worker. (Tr. 52-53.)

9

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and*

416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through December 31, 2010.

2. Plaintiff has not engaged in substantial gainful activity since January 18, 2008.

3. Plaintiff has the following impairments which are severe singly or in combination: bipolar disorder and degenerative changes of the lumbar spine.

4. Plaintiff does not have an impairment or combination of impairments that meets or medicall equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) such that he is able to perform work that requires lifting 20 pounds occasionally or 10 pounds frequently; sitting, standing or walking for six hours out of eight; but does not require climbing of ladders or scaffolds. The work he is able to perform does not involve commercial driving, or exposure to hazards such as unprotected heights or uncovered industrial machinery. The work he is able to perform involves simple routine tasks that do not take place in public, and which require limited and superficial contact with supervisors and co-workers. The work does not include tasks involving arbitration, confrontation, directing the work of others, or being responsible for the safety of others.

6. Plaintiff has past relevant work.

7. Plaintiff was born on August 19, 1959 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Plaintiff subsequently changed age category to closely approaching advanced age when he turned 50 on August 19, 2009.

8.   Plaintiff has at least a high school education and is able to communicate in English.

9.   Plaintiff is unable to perform any of his past relevant work.

\* \* \*

11.  Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

12.  Plaintiff has not been under a disability, as defined in the Act, from January 19, 2008 through the date of this decision.

(Tr. 15-20.)

### V.   LAW & ANALYSIS

#### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported

by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff argues that ALJ Kleber's determination of his RFC is not supported by substantial evidence in the record.  He also asserts that ALJ Kleber misapplied the Sixth Circuit's reasoning in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 2004), when she adopted ALJ Round's findings, and assigned Plaintiff an RFC identical to the RFC determined by ALJ Round, despite concluding that Plaintiff's condition had deteriorated during the period of time between the two hearings.  Finally, Plaintiff argues that new and material evidence in his case merits remand in this matter.  None of Plaintiff's arguments are well taken.

#### 1. Whether Substantial Evidence Supports the RFC

Plaintiff argues that there is insufficient evidence to support ALJ Kleber's determination of his RFC because ALJ Kleber: (1) incorrectly applied the treating physician rule to Dr. Boehm's opinions; and (2) failed to identify the weight given to the opinion of Dr. Sunbury.  The Commissioner argues that ALJ Kleber did not err in assigning little weight to Dr. Boehm's opinion, and properly identified her reasons for doing so.

13

"An ALJ must give the opinion of a treating source controlling weight if [s]he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).

Here, ALJ Kleber assigned little weight to Dr. Boehm's opinion because his April 2008 and August 2010 medical source statements were not consistent with contemporaneous records of Plaintiff's treatment and examinations. (Tr. 17.) Substantial evidence supports this conclusion. In his medical source statements, Dr. Boehm assigned Plaintiff significant limitations in his ability to control his impulses; to concentrate and interact with others, including supervisors, co-workers and the general public; and to follow instructions and directions. (Tr. 407-08). Dr. Boehm described Plaintiff as destructive, lacking impulse control and suffering from an impaired memory. (Tr. 272-73.) However, as ALJ Kleber noted in her opinion, Dr. Boehm's records for the same periods of time do not reflect these substantial limitations to Plaintiff's functioning. (Tr. 17.) Rather, other than his diagnoses, Dr. Boehm's treatment notes record only

14

Plaintiff's subjective complaints of anxiety, frustration and stress, without referring to any objective functional limitations. (Tr. 424, 484.)  Further, in declining to accord controlling weight to Dr. Boehm's opinion, ALJ Kleber pointed to Dr. Sunbury's opinion that Plaintiff was only moderately limited in his ability to relate to others, and that his ability to understand and follow instructions was not impaired.  (Tr. 17, 277.)  Accordingly, Dr. Boehm's medical source statements were inconsistent with his own treatment records, as well as Dr. Sunbury's opinions, and ALJ Kleber's decision to accord little weight to Dr. Boehm's opinion is supported by substantial evidence in the record.

      Plaintiff argues, conclusorily, that ALJ Kleber's reasons for rejecting Dr. Boehm's opinions were not "sufficiently clear," and that ALJ Kleber failed to identify the inconsistencies on which she relied.  (Plaintiff's Brief ("Pl. Br.") at 11-12.)  However, as discussed above, ALJ Kleber pointed to specific instances of contradiction between Dr. Boehm's opinion and treatment records, and between the conclusions of Drs. Boehm and Sunbury.  (Tr. 17.)  Plaintiff also asserts that ALJ Kleber failed to consider records of Plaintiff's treatment that support Dr. Boehm's conclusions regarding his functional limitations.  However, of the pages of the record cited to support this argument, one refers to records related to Plaintiff's physical condition (Tr. 392), two refer to records of Plaintiff's subjective complaints made to Ms. Gambitta (Tr. 473, 474), and one, 513, (repeated twice) refers to a page that does not exist in the record.   Accordingly, these arguments lack merit.

      Plaintiff also argues that, even if Dr. Boehm's opinion is not entitled to controlling weight,  ALJ Kleber erred by summarily rejecting his opinion without properly

15

considering the appropriate weight to accord it, and that ALJ Kleber erred in failing to resolve the conflicts between the opinions of Drs. Boehm and Sunbury.  However, ALJ Kleber's decision reflects that she considered Dr. Boehm's observations of Plaintiff's progress, the consistency of his opinion with the record as a whole, and the supportability of the opinion.  *See* 20 C.F.R. § 404.1527(c)(2)-(5) (requiring an ALJ to consider certain factors when determining the weight to accord to a medical opinion).  She also explained that she gave Dr. Sunbury's opinion greater weight because it was consistent with the rest of the record, including the evidence as described in ALJ Round's decision.  Furthermore, and most crucially, as discussed above, ALJ Kleber provided "good reasons" for declining to afford controlling weight to Dr. Boehm's opinion, such that the basis for her conclusion was apparent from the decision.  *See* *Wilson,* 378 F.3d at 544 (noting that the "requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision) (internal quotation marks omitted).[2]  Accordingly,

---

[2]  Plaintiff also argues that ALJ Kleber erred in failing to identify the amount of weight she accorded to Dr. Sunbury's opinion. (Pl. Br. 14.) However, the case law upon which Plaintiff relies to support this argument addresses the rationale for requiring an ALJ to identify the weight she assigned to a *treating* physicians' opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (noting that one reason for requiring an ALJ to identify and explain the weight he or she applies to a treating source's opinion is to make certain that the ALJ correctly applies the treating source rule); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009) (same).  Although Plaintiff asserts that the rationale for requiring an ALJ to identify and explain the weight he or she assigns to a treating physician's opinion applies equally to the opinion a non-treating consultative examiner, he does not explain why. Accordingly, he has waived any argument on this point. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–996 (6th Cir.1997)).

substantial evidence supports ALJ Kleber's determination of Plaintiff's RFC.

### 2. Whether ALJ Kleber Misapplied *Drummond*

Plaintiff argues that ALJ Kleber violated the holding of *Drummond* when she adopted ALJ Round's conclusions and assigned Plaintiff an RFC identical to the RFC assigned by ALJ Round despite noting that Plaintiff's condition had deteriorated since his October 2007 administrative hearing.  The Commissioner argues that, because substantial evidence in the record supports ALJ Kleber's RFC, she did not err in adopting ALJ Round's findings.[3]  Plaintiff's argument is not well taken.

Plaintiff's argument is essentially that, because ALJ Kleber determined that Plaintiff's condition had deteriorated since his hearing before ALJ Round, ALJ Kleber was precluded by *Drummond* from adopting ALJ Round's findings and RFC.  However, that is not the holding of *Drummond*.  Rather, in *Drummond*, the Sixth Circuit held that, because *res judicata* applied to proceedings under the Act, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842.  The Sixth Circuit did not hold that, where a

---

[3] The Commissioner also argues that ALJ Kleber's characterization of Plaintiff's condition was inadvertent.  ALJ Kleber's conclusion that Plainitff's condition had deteriorated since his October 2007 hearing arguably conflicts with her decision, later in her opinion, to adopt ALJ Round's "findings which specifically pertain to [Plaintiff's] mental health."  (Tr. 12, 17.)  The precise meaning of this statement is not clear, as it could mean either that ALJ Kleber was adopting only ALJ Round's conclusion regarding Plaintiff's RFC, or that she was adopting ALJ Round's characterization of Plaintiff's mental health issues.  Given that ALJ Kleber's conclusion regarding Plaintiff's RFC is supported by substantial evidence, however, this potential contradiction is not  a basis for remand.  *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (noting that, when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

17

subsequent ALJ determines that new evidence demonstrates a change in a claimant's condition, that subsequent ALJ must adopt findings different from those of the prior ALJ. Rather, the standard for reviewing a subsequent ALJ's decision remains substantial evidence. *Id.* at 843 (applying the substantial evidence standard to the ALJ's conclusion that the claimant's condition had improved). Because substantial evidence supports ALJ Kleber's conclusion regarding Plaintiff's RFC, this argument lacks merit.

### 3. Whether New Evidence Requires Remand

Finally, Plaintiff argues that new evidence merits remand in this matter. Specifically, Plaintiff points to notes from Dr. Boehm indicating that, in April 2011, Plaintiff continued to experience anxiety and depression (Tr. 489), and, in June and October 2011, was considering undergoing electro convulsive therapy ("ECT") (Tr. 490, 491), as well as a report of Plaintiff's October 2011 consultation with University Hospitals regarding ECT (Tr. 494-96.) In the report, the University Hospital psychiatrist concludes that Plaintiff is a "good candidate for ECT due to his chronicity and severity." (Tr. 496.)[4] The Commissioner argues that this evidence is not material and, thus, does not merit remand.

Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . . for further action by the Commissioner . . . and it may at any time

---

[4] The location in the record of Plaintiff's purportedly new and material evidence was not apparent from his Brief, as the administrative transcript pages cited in the Brief do not exist in the record. (Pl. Br. at 17.) Plaintiff's counsel is reminded to accurately cite to the administrative transcript and to verify the accuracy of citations in briefs.

order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate. *See, e.g.,* Sizemore v. Sec. of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that" the Commissioner "would have reached a different disposition of the disability claim if presented with the new evidence." *Id.*

Here, Plaintiff has not met his burden of proof with respect to materiality. Although the new evidence reflects that Plaintiff was depressed and anxious, and was considering a new treatment option, nothing in the medical records post-dating his October 2010 administrative hearing suggest that he was experiencing new symptoms or had developed additional limitations. Accordingly, there is no basis for concluding that the outcome of his disability claim would have been different had Plaintiff presented this new evidence.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 2, 2012